C. W. RANTOUL CO. v. CLAREMONT PAPER CO.

CLAREMONT PAPER CO. v. C. W. RANTOUL CO.

(Circuit Court of Appeals, First Circuit. May 9, 1912.)

Nos. 955, 956.

1. FRAUDS, STATUTE OF (§ 120*)—LAW OF FORUM.

The rule applied that a contract is within the statute of frauds depends on the law of the forum.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 268; Dec. Dig. § 120.*]

2. FRAUDS, STATUTE OF (§ 84*)—CONTRACTS—CONSTRUCTION—SALES.

Plaintiff having purchased a quantity of foreign paper pulp contracted orally with defendant that the pulp should be shipped to defendant's paper mill, plaintiff to pay defendant on the basis of 87⁄8 cents per hundredweight, and a further sum of $1.50 for each hundred pounds of paper to be manufactured for the plaintiff by the defendant from such pulp according to plaintiff's directions. Held, that the manufacture of the resulting paper by defendant and the return thereof to plaintiff was an essential part of the contract, and therefore it was not within the statute of frauds as a contract for the sale of pulp.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 154–161; Dec. Dig. § 84.*]

3. DAMAGES (§ 218*)—BREACH OF CONTRACT—ALLOWANCE.

Where defendant violated a contract with plaintiff to manufacture paper from pulp to be delivered to it by plaintiff at specified prices, an instruction that the jury should deduct allowances for pulp which had been

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shipped which was not up to the contract quality was proper in the absence of evidence that the substitution of other pulp could have been accomplished within a reasonable time.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 560–562; Dec. Dig. § 218.*]

4. DAMAGES (§ 40*)—BREACH OF CONTRACT—ELEMENTS.

Where defendant violated a contract to manufacture for plaintiff paper from pulp delivered to it by plaintiff at specified prices, defendant refusing to receive the pulp or manufacture the paper, the court properly charged that the jury might deduct from the estimate of plaintiff's loss a sum representing the proportionate cost of doing the business, or on account of probable loss of accounts, insurance accounts, and selling expense.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 72–88; Dec. Dig. § 40.*]

In Error to the Circuit Court of the United States for the District of New Hampshire.

Action by the C. W. Rantoul Company against the Claremont Paper Company. Judgment for plaintiff, and both parties bring error. Affirmed.

John E. Allen, of Keene, N. H., and Samuel J. Rosensohn, of New York City (Charles O. Brewster, on the brief), for C. W. Rantoul Co.

Clarke C. Fitts, of Brattleboro, Vt. (Hale K. Darling, on the brief), for Claremont Paper Co.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. These were cross-writs of error arising out of a suit in the Circuit Court by the Rantoul Company against the Claremont Company. It will avoid obscurity to describe the parties in that way throughout. The suit was tried on an issue to the jury, and the judgment was for the Rantoul Company in the amount of $2,174.72. There are several counts in the declaration, but, so far as these writs of error are concerned, an extract from one is sufficient for both. The action was on a contract described as follows:

"In a plea of assumpsit for that the defendant on December 10, 1908, in the state, county, and city of New York, in consideration of the plaintiff's promise and agreement that it would furnish the defendant thereafter and in 1909 at least two thousand tons long weight of pulp called and known as 325 A unbleached sulphate, the same to be imported from one H. Hartig of Hamburg in the German Empire, to be unloaded and docked at Boston, in the District of Massachusetts, in pursuance of a certain contract between the plaintiff and said Hartig dated December 10, 1908, and thence to be shipped by rail to Claremont aforesaid, and in further consideration that the plaintiff promised and agreed to pay the defendant on a basis of eight and seven-eighths cents for each one hundred pounds of pulp so delivered, and a further sum of one and one-half dollars for each one hundred pounds of an all-sulphate Kraft paper to be manufactured by said defendant at its mill owned and operated by it at Claremont aforesaid, from said pulp for the plaintiff, the defendant promised and agreed to and with the plaintiff that it would exclusively make and manufacture for the plaintiff an all-sulphate Kraft

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

paper according to instructions therefor previously given by the plaintiff to the defendant, from the pulp to be furnished by the plaintiff to the defendant as above set forth, and for the price above set forth."

The contract was oral, and whether or not the contract was made as alleged, and was as alleged, afforded, under the circumstances, issues for the jury. These issues were submitted to the jury with a full charge, which we find to have been correct so far as its general terms are concerned; so that, if it needed qualifications or particular observations on any special points, that was for the parties to develop properly at the trial, and to explain to us. The Claremont Company refused to accept the pulp or otherwise perform the contract.

One of the main points advanced by the Claremont Company is that, as there was no delivery and acceptance, and no payment, the contract was within the statute of frauds. On this proposition the Claremont Company divides up this transaction into two. One is a sale in the ordinary way from the Rantoul Company to the Claremont Company, and the other is a resale between the parties. That point of view is essential both on the question of damages and on the question of the statute of frauds. From that point the statute of frauds might apply, but from the point of view of the Rantoul Company, which was adopted by the jury and the court, the agreed transaction was not two acts of sale, but a complicated single transaction of an entirely different character.

The charge of the court submitted this main proposition to the jury on the issues raised by the declaration; and consequently it directed the jury, if it found for the plaintiff, to assess damages generally as follows:

"The plaintiff is entitled as damages to a sum equal to the value of the contract to the plaintiff; in other words, what it would have made from it if the defendant performed it."

It follows, therefore, the verdict of the jury being in favor of the plaintiff, that the whole transaction was consolidated into one contract of the nature set out in the declaration. To explain this a little further we set out the entire contract by virtue of which the Rantoul Company in the first place obtained title to the pulp, which initiated what was done between the parties to this litigation, as follows:

"We confirm having bought from Mr. Hugo Hartig, of Hamburg, through Messrs. Felix Salomon & Co., New York, Agents,

"Quantity and Description of Goods: Two thousand (2000) tons of 2240 lbs., air-dry weight,—No. 325 A—Unbleached Sulphate. Quality, as per sample submitted and attached.

"Price and Terms of Payment: Two dollars one and one quarter cents ($2.01¼) per hundred (100) lbs. ex dock Boston. Net cash in thirty (30) days.

"Shipment: From Europe, in about equal lots every alternate week, beginning this month, to extend until November, 1909, inclusive. A. D. Little's test to be final.

"Accepted:                                Hugo Hartig.
                                          "Felix Salomon & Co., Agents.
                                      "C. W. Rantoul Co.
                                          "C. W. Rantoul, Jr., Treas.
'Date December 10, 1908."

The oral contract between the Rantoul Company and the Claremont Company was that, coincident with this, the parties to this litigation, following out a line of transactions which had before occurred between them, made a verbal arrangement by which this pulp was to be delivered to the Claremont Company on certain specified terms, and manufactured into paper, and returned to the Rantoul Company on other terms stipulated between them. This must be accepted as determined by the verdict of the jury and the judgment thereon. It is important to observe that what was to be returned was the peculiar form of paper to be manufactured by the Claremont Company at its mill, owned and operated by it.

[1, 2] It may be questioned whether the title to the pulp passed to the Claremont Company, so as to relieve the Rantoul Company from the results of any loss or destruction thereof; but this is not important, because, aside from it, it is plain that the manufacture of the resulting paper by the Claremont Company and the return thereof to the Rantoul Company was a substantial, and indeed an essential, part of the arrangement, in view of all the circumstances of the case, including, with the rest, the somewhat peculiar and unusual nature of the paper to be manufactured. On the statute of frauds a number of decisions by the courts of New Hampshire have been cited to us; and there is no doubt that, at least with reference to sales of goods, any question arising under the statute of frauds, as well as questions arising under general statutes of limitations, is to be settled by the law of the forum. Chitty on Contracts (11th Am. Ed.) 132, 133. It must, however, be conceded, in accordance with the settled contruction given to the statute of frauds so far as relates to sales of goods, that a contract of the peculiar character we have here is not within it. We may refer again for this to the same edition of Chitty on Contracts, pages 541 and sequence, observing that, so far as the law in the United States is concerned, this edition of Chitty on Contracts is still the most satisfactory treatise in regard to that statute. We need make no further observation on that topic.

If this had been merely an ordinary sale or resale of articles of personal property, well recognized on the market, the rulings on the part of the court on the question of damages which are criticised by both parties might well have been other than they were, or in addition thereto; but, under the circumstances, we think that the general proposition given by the court, to the effect that the only question is how much would have been made on this particular contract if the Claremont Company had performed, correctly submits the case, so far as the main issue is concerned.

On the part of the Rantoul Company there seems to be a general complaint, accompanied with a schedule of items resulting in a claim of damages much larger than what was awarded; but, beyond the particulars which we will point out, we are not referred to any specific portions of the record which suggest that the court made any error in its instructions on this issue, or which would enable us to revise the findings of the jury so far as it was dealing with mere questions of fact. Therefore we are relieved from pursuing this

branch of the case further, beyond the following subordinate propositions.

[3] It seems that some of the pulp was on the ocean when the Claremont Company refused to carry out the contract. The Rantoul Company has made no references to the record, as required by our rules, so that we may not correctly apprehend its claims in this respect. The court instructed the jury that, on the question of damages, it should deduct allowances for the pulp which had been shipped which was not up to contract. The Rantoul Company excepted to this instruction, but submitted no special point to the court in reference thereto; and as a general proposition it was correct. It is claimed to us that, if the performance of the contract had not been obstructed, the Rantoul Company could have caused other pulp wood to have been shipped of proper quality, and thus have met any claim for a reduction on this account. There is no evidence in the record to support this proposition, or even to show that the substitution of other pulp could have been accomplished within a reasonable time.

[4] Also, the Rantoul Company objected to any deduction from the estimate of loss on the contract on account of the cost of doing the business, or on account of probable loss of accounts, insurance of accounts, and selling expenses. The Rantoul Company submitted no particular requests on this topic, but merely excepted generally to the instructions given in reference thereto. Those instructions were as follows:

"You should deduct from the plaintiff's claim, if you get to damages, such sum as you find it would have cost to have done the business, including probable loss of accounts and customers' bills, interest account, and selling expenses."

As it must be assumed that all these matters were inherent in transacting the business, and yet could not be specifically estimated or proved, it was within the province of the jury to make a reasonable deduction in reference thereto. It follows that this instruction was generally correct, and a general exception to it cannot lie. If erroneous in any particular, the particular should have been pointed out, and the facts appertaining thereto made to appear in the record.

The Claremont Company also made some questions in reference to the assessment of damages; but it is not at all clear what was intended, or whether, indeed, they were not all met by the court and the jury. Certainly no specific considerations have been presented to us on this or on any other topic, which seem to require any further observations from us.

The judgment of the Circuit Court is affirmed, with interest; and on each writ of error the defendant in error recovers its costs of appeal.